UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YVONNE OWUSUMENSAH A/K/A YVONNE KING, | CIVIL ACTION 1:14-cv-03640 |
| Plaintiff, | |
| v. | COMPLAINT |
| CAVALRY PORTFOLIO SERVICES, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT FOR RELIEF PURSUANT
TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, YVONNE OWUSUMENSAH A/K/A YVONNE KING ("Yvonne"), by and through her attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, CAVALRY PORTFOLIO SERVICES, LLC, as follows:

**NATURE OF THE ACTION**

1. Yvonne brings this action for damages for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et. seq. ("ICFA").

**JURISDICTION AND VENUE**

2. This action arises under, and is brought pursuant to, the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331, 1337, as this action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391; Defendant conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

## PARTIES

4. Yvonne is a natural person who resides in the Northern District of Illinois and is a "consumer," as defined by the FDCPA, 15 U.S.C. §1692a(3).

### Cavalry Portfolio Services, LLC

5. Defendant Cavalry Portfolio Services, LLC ("Cavalry") is a limited liability company chartered under Delaware law that transacts business in Illinois. Cavalry's principal place of business is located at 4050 East Cotton Center Boulevard, Phoenix, Arizona 85040. Cavalry's registered agent in Illinois is CT Corporation System, located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

6. Cavalry is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

7. Cavalry then seeks to enforce the alleged debts against the consumers through lawsuits.

8. The mails and telephone system are used in connection with the prosecution of the Cavalry lawsuits.

9. Cavalry is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6).

## FACTS SUPPORTING CAUSE OF ACTION

10. Cavalry has been attempting to collect from Yvonne a debt alleged to have been originally owed by FIA Card Services, N.A. ("FIA," or "FIA account").

11. On or about May 18, 2012, Cavalry filed a complaint in the Circuit Court of Cook County, Illinois against Yvonne. The case was captioned *Cavalry Portfolio Services, LLC v. Yvonne Owusumensah A/K/A Yvonne King*, case number 2012-M1-130357 ("collection case"). *See* Exhibit A, a true and correct copy of the collection case complaint ("Cavalry's complaint").

12. In the collection case, Cavalry alleges that it purchased and now owns the FIA account. Cavalry's complaint was solely supported by the affidavit of Stephanie Cappelli ("Cappelli"), a purported employee of Cavalry. *See* Exhibit A.

### The Debt Buying Industry

13. Cavalry is a debt buyer. Debt buying is the practice of purchasing charged-off debts from debt originators, or other debt buyers. These debts are purchased in bulk and are usually credit card debts.

14. Debts sold by original creditors are typically bundled into portfolios because bundling accounts into portfolios reduces the transactions costs of exchange. *See* Federal Trade Commission, The Structure and Practices of the Debt Buying Industry, January 2013, available at http://www.ftc.gov/reports/structure-practices-debt-buying-industry (last visited March 5, 2014) ("FTC Debt Buyer Report").

15. When purchased, these bundled account portfolios are transferred via electronic data files that contain only a few data elements from the original account records. When printed out, the electronic evidence of the sale, or data file, consists of one line per debtor.

16. The typical data file contains the original account number, the name of the consumer, the address of the consumer, the last balance purportedly owed, the date of the last payment, and the date that the account was charged-off. *Id*. at pp. 34-35.

17. Debt buyers generally do not obtain the original account records (the day-to-day transactions on the account that are generally made at or near the time of each transaction, in the normal course of business) related to the purchased debts. For most portfolios, buyers do not receive any documents at the time of purchase. Only a small percentage of portfolios include documents such as account statements or the terms and conditions of credit. *Id*. at p. iii.

18. The data files obtained by debt buyers are not the original account records that were created in the regular course of business by the credit originator—they are created prior to the sale of a portfolio of charged-off debts. They are created for sale to a third party, and are not created in the regular course of servicing the credit card account.

19. Furthermore, debt sales are typically "as-is," with limited or no ability to obtain additional information from the original creditor; debt sellers generally disclaim the accuracy of the information transferred in the data file. *See* FTC Debt Buyer Report at p. 25.

20. Where different debt buyers enter into purchase and sale agreements with the same seller, the structure, organization, and phrasing of these agreements are virtually identical. *Id.* at pp. 24-25.

21. Cavalry relied on the information that it allegedly obtained from FIA (the data file) when it filed the Collection case.[1]

22. However, Cavalry had absolutely no assurance that the information it received was accurate because, on information and belief, FIA allegedly sold its debts to Cavalry, or its successor in interest, in "as-is" condition.

23. The information on which Cavalry relied to file the state court action would not be considered satisfactory evidence if submitted to court. A document is not admissible as a

---

[1] Actually, Cavalry does not allege that it purchased the FIA account directly from FIA; the Cappelli affidavit and other pleadings are unclear as to the FIA account's chain of title. Regardless, if the FIA account was sold, it was done so in the manner described above; any subsequent buyer would have received the one line data file "as-is."

"business record" under Illinois law if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness …" Illinois R. Evid. 803(6).

24. It is common practice in the industry to purchase debts without obtaining original account information due to the time and cost of obtaining such documentation.

### Pattern and Practice in State Court Collection Actions

25. Cavalry routinely files state court collection actions with no more evidence of the debt in question than the single line data file described above.

26. Cavalry knows that the information on which it relies to file the state court collection actions will not be supported with adequate evidence, yet Cavalry is not willing or not able to obtain such evidence.

27. Usually when Cavalry files a collection action it obtains a default judgment against the consumer.

28. Upon information and belief, the default rate in such lawsuits may be as high as ninety percent.

29. The default rate is so high in the collection actions because Cavalry serves the consumer with a complaint and affidavit falsely alleging Cavalry's ability to prove the information contained therein.

30. The purpose of such affidavits is to deceive the consumer into believing that Cavalry can prove the case at trial and to intimidate the consumer into payment.

31. The collection case affidavits are deceptive because they purport to be based on a review of "electronic business records" transferred by the original creditor, "maintained in the "routine course of business … with entries made at or very near the time of any such

5

occurrence." *See* Exhibit A. In truth, the affidavits are created from the one line data file that Cavalry allegedly purchased "as-is."

32.     By submitting such an affidavit to the consumer, while concealing documents in which the alleged account seller effectively disclaims the accuracy of its records and information, Cavalry perpetrates a fraud on the consumer.

33.     Accordingly, the consumer is discouraged from defending the lawsuit or challenging the allegations contained in the complaint and affidavit.

34.     Cavalry actively conceals the nature of its defective standing; an unsophisticated consumer would not know that these "as-is" purchase agreements exist.

35.     An unsophisticated consumer would not be aware of the elements of the business records exception to the rule against hearsay.

36.     When Cavalry files a collection action against a consumer, it implicitly represents that the allegations and factual contentions contained in the complaint and affidavit are backed by evidentiary support. Federal Rule of Civil Procedure 11(B)(3) states:

> Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> []
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery
>
> Fed R. Civ. Proc. 11(B)(3).

37. In these *ex parte* collection actions Cavalry does not disclose to the court that it has not conducted a reasonable investigation into its claims or that it would never have presented evidence to support its claims. *See* Comment 14 to Rule 3.3 of the Illinois Rules of Professional conduct, which states: "… in any *ex parte* proceeding … [t]he lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision."

38. Cavalry does not conduct a reasonable investigation into a debt's existence in the collection actions it files; rather Cavalry intends to obtain a default judgment against the consumer by falsely representing to the consumer and the court, through the filing of its complaint and affidavit, that it has evidence to support the claims stated therein.

39. This practice amounts to an unfair, deceptive and improper use of the court system in connection with the collection of a debt.

40. Once the default judgment is entered Cavalry can proceed to garnishment regardless of whether it could have proven its case at trial.

41. Cavalry routinely voluntarily dismisses cases where the consumer appears before the court to defend the action in order to protect its business model and avoid losing at trial.

### Yvonne's Defense of the Collection case

42. Yvonne was not served in the collection case until June 2013, nearly one year after the suit was filed, and Cavalry was able to obtain a default judgment against her on July 17, 2013. *See* Exhibit B, a true and correct copy of the court docket for case number 12 M1 130357.

43. On or about July 30, 2013, Yvonne retained Sulaiman Law Group, Ltd. ("counsel") to defend the collection case.

7

44. On July 30, 2013, Yvonne, via counsel, filed a Motion to Vacate the July 17, 2013 default judgment and for leave to file an appearance. *See* Exhibit C, a true and correct copy of Yvonne's Motion to Vacate.

45. On August 12, 2013, Yvonne's Motion to Vacate the July 17, 2013 default judgment was granted, Yvonne was granted leave to file her appearance, and given twenty-eight days to answer Cavalry's complaint or otherwise plead. *See* Group Exhibit D, a true and correct copy of the August 12, 2013 Order and counsel's appearance filed the same day.

46. On December 17, 2013, Yvonne, via counsel, filed her Motion to Dismiss, based on Cavalry's lack of standing.[2] *See* Exhibit E, a true and correct copy of Yvonne's Motion to Dismiss.

47. On February 24, 2014, Yvonne's Motion to Dismiss was denied, and the collection case was set for trial on April 28, 2014. *See* Exhibit F, a true and correct copy of the February 24, 2014 Order.

48. Despite Cavalry's continued assertion that it could demonstrate its standing and would be presenting its case at trial, Cavalry sent counsel notice of its Motion to Dismiss without Prejudice on or about April 25, 2014, just days before the scheduled trial date, and voluntarily dismissed the collection case on the date of trial. *See* Group Exhibit G, a true and correct copy of Cavalry's Motion to Dismiss without Prejudice and the collection case order entered on April 28, 2014.

49. It can be reasonably inferred that Cavalry voluntarily dismissed the collection case because Cavalry knew that it could not demonstrate the accuracy of the information contained in its complaint, or that it even owned the FIA account at all.

---

[2] There was significant motion practice in the collection case not material to the present action.

50. Even if Cavalry had intended to take the collection case to trial, it would have been unable to prevail at trial due to its lack of evidence demonstrating ownership of the FIA account and the accuracy of the information contained in Cavalry's complaint described above.

51. By operation of law, Cavalry has one year or until the statute of limitations expires, whichever is longer, to re-file its case against Yvonne.

52. Yvonne is left to wonder when or if he will be served with another summons containing another deceptive affidavit and baseless complaint.

53. This uncertainty has caused Yvonne significant stress and emotional distress.

54. Yvonne was harmed by Cavalry's unfair and deceptive practices because he had to spend time and energy defending against Cavalry's frivolous lawsuit.

55. Yvonne was further harmed by Cavalry's unfair and deceptive practices, as she incurred costs defending against Cavalry's frivolous lawsuit, including retaining counsel.

## COUNT I - VIOLATION OF FDCPA

56. Yvonne repeats and realleges paragraphs 1 through 55 as though fully set forth herein.

57. The collection case was an attempt to collect a "consumer debt" as defined by the FDCPA, 15 U.S.C. §1692a(5).

58. Cavalry violated 15 U.S.C. §§1692d, 1692e, e(2), e(5), e(10) and (f) by filing the collection case based on unverified account information.

59. Cavalry violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; Cavalry's filing of the collection case, while knowing that it could not prevail at trial,

9

and would dismiss the action if challenged, served only to harass Yvonne in an attempt to improperly collect on the FIA account.

60. Cavalry violated 15 U.S.C. §1692e and e(10) by using a false, deceptive, or misleading representation or means in connection with the collection of any debt. The filing of the collection case was false and deceptive because Cavalry could not demonstrate ownership the FIA account. As discussed above, the false Cappelli affidavit was intended to deceive and intimidate Yvonne into paying Cavalry on the FIA account by misrepresenting the evidentiary support for the claims asserted therein, including that Cavalry purchased the FIA account and the balance due. Cavalry's complaint and affidavit are inherently deceptive, false, and misleading because they are based on unverified information that Cavalry acquired "as-is" (the single-line data file); not the original account records. Yet, the Cappelli affidavit falsely represents that Cavalry could prove the claims set forth therein. *See* Exhibit A.

61. Cavalry violated 15 U.S.C. §1692e(5) by threatening to take action that it did not intend to take when it filled the collection case knowing that it could not prevail at trial, and that it would dismiss its case if challenged. As stated above, Cavalry does not intend to prove its case at trial; rather its business model is to obtain a default judgment or dismiss the action to avoid getting caught and losing at trial. Furthermore, Cavalry continued to assert its ability to prove its case, all the while knowing it did not intend to stand trial.

62. Cavalry violated 15 U.S.C. §1692e(2) by falsely representing the character, amount, and status of the FIA account because Cavalry did not own the FIA account. Even if Cavalry did own the FIA account, it would have no way of determining the amount claimed. Thus, Cavalry's assertions as to its ownership and knowledge of the FIA account information set forth in the Cavalry complaint and affidavit were false.

63. Cavalry violated 15 U.S.C. §1692(f) by using unfair means to collect or attempt to collect any debt; Cavalry's filing of the collection case, while knowing that it could not prevail at trial, was unfair because Yvonne had to spend time and money defending against a frivolous lawsuit. Moreover, Cavalry's pattern and practice of filing collection actions against consumers, without conducting a reasonable investigation into its claims or disclosing its lack of evidence, with the intent of obtaining a default judgment, amounts to an unfair debt collection practice effectuated through the courts. This practice is unfair to the consumer and against public policy.

64. Cavalry was aware at the time that it allegedly purchased the FIA account that any data it received was being sold "as-is" and that it could not verify the accuracy of the data.

65. Nevertheless, Cavalry filed the collection case in order to induce Yvonne to pay the money that Cavalry alleged was owed.

66. Cavalry's complaint is a material violation of the FDCPA because Cavalry effectively represents to consumers that it can prove ownership of the alleged debt when it cannot.

67. It is Cavalry's regular business practice to file claims against consumers even though it cannot verify the data in its complaints.

68. As pled in paragraphs 51 through 55 above, Yvonne was harmed by Cavalry's unfair and deceptive practices.

69. Yvonne is therefore entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff, YVONNE OWUSUMENSAH, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")

70. Cavalry restates and realleges paragraphs 1 through 55 as though fully set forth herein.

71. Cavalry violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their efforts to collect an unverified debt from Yvonne; Cavalry's active participation in the collection case, while knowing that it could not prevail at trial, was intended only to deceive Yvonne into thinking he would have to pay Cavalry to avoid a judgment against her.

72. Cavalry does not conduct a reasonable investigation into a debt's existence in the collection actions it files; rather Cavalry intends to obtain a default judgment against the consumer by representing to the consumer and the court, through the filing of its complaint and affidavit, that it has evidence to support the claims stated therein.

73. Cavalry's pattern and practice of filing collection actions against consumers, without conducting a reasonable investigation into its claims or disclosing its lack of evidence,

with the intent of obtaining a default judgment, amounts to an unfair debt collection practice effectuated through the courts.

74. Cavalry's pattern and practice described above amounts to an unfair, deceptive and improper use of the courts in connection with the collection of a debt.

75. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

76. Yvonne is a consumer as defined by ICFA, 815 ILCS 505/1(e).

77. Cavalry's attempt to collect a debt is part of the conduct of any trade or commerce as defined by ICFA, 815 ILCS 505/1(f).

78. The collection case and the related complaint and affidavit represent the use of deception, fraud and false pretense in an attempt to collect an unverified debt.

79. Cavalry's active concealment of its lack of evidence to support its claims represents a material misrepresentation, made in the conduct of trade or commerce.

80. Cavalry intended that Yvonne rely on its misrepresentations and pay Cavalry for the FIA account.

81. Additionally, Cavalry's abusive trial strategy was inherently unfair to Yvonne— Cavalry represented that it could prove its case at trial, and that it would be able to demonstrate its standing to sue at trial. All the while, Cavalry knew it could not support its case with sufficient evidence and it never intended to go to trial.

82. As a result of this unfair and deceptive conduct, Yvonne had to expend time and money defending against a lawsuit that Cavalry had no intention of litigating.

83. Cavalry intended that Yvonne rely on its misrepresentations.

84. ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

815 ILCS 505/10a.

85. Yvonne was harmed by Cavalry's unfair and deceptive practices because she had to spend time and energy defending against Cavalry's frivolous lawsuit.

86. Yvonne was further harmed by Cavalry's unfair and deceptive practices as she incurred costs by retaining counsel to defend against the frivolous lawsuit.

87. Yvonne was also exposed to significant emotional strain as a result of the Cavalry's unfair and deceptive business practices.

88. Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which Cavalry routinely engages as part of its business model.

89. An award of punitive damages is appropriate because Cavalry's conduct described above was willful and wanton, and showed a reckless disregard for the protections afforded by ICFA, and Yvonne's rights thereunder.

90. As such, Yvonne is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, YVONNE OWUSUMENSAH, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff actual damages and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding the Plaintiff costs and reasonable attorney fees; and

e. awarding any other relief as this Honorable Court deems just and appropriate.

Dated: May 18, 2014                                    Respectfully Submitted,

/s/ Daniel J. McGarry
Mathew H. Hector, Esq. ARDC#6283058
Daniel J. McGarry, Esq. ARDC#6309647
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188